UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAULA D. G., an Individual,<br><br>        Plaintiff,<br><br>        v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>        Defendant. | Case No.: 2:18-02492 ADS<br><br>MEMORANDUM OPINION AND ORDER |

## I. **INTRODUCTION**

Plaintiff Paula D. G.[1] ("Plaintiff") challenges the Defendant Andrew M. Saul[2], Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.
[2] The Complaint, and thus the docket caption, do not name the Commissioner. The parties list Nancy A. Berryhill as the Acting Commissioner in the Joint Submission. On June 17, 2019, Saul became the Commissioner of Social Security. Thus, he is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).

of her application for a period of disability and disability insurance benefits ("DIB"). Plaintiff contends that the Administrative Law Judge ("ALJ") improperly rejected the opinion of her treating physician, as well as her own testimony. For the reasons stated below, the decision of the Commissioner is affirmed, and this matter is dismissed with prejudice.

## II. PROCEEDINGS BELOW

### A. Procedural History

Plaintiff protectively filed her application for DIB on July 23, 2014, alleging disability beginning August 15, 2013. (Administrative Record "AR" 153-57). Plaintiff's claims were denied initially on October 10, 2014 (AR 97-102), and upon reconsideration on March 5, 2015 (AR 105-10). A hearing was held before ALJ Robin Rosenbluth on October 7, 2016. (AR 40-67). Plaintiff, represented by counsel, appeared and testified at the hearing, as did a vocational expert, June C. Hagen. (Id.)

On December 5, 2016, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act.[3] (AR 15-33). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on July 31, 2018. (AR 1-6). Plaintiff then filed this action in District Court on March 27, 2018, challenging the ALJ's decision. [Docket ("Dkt.") No. 1].

---

[3] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A).

On August 27, 2018, Defendant filed an Answer, as well as a copy of the Certified Administrative Record. [Dkt. Nos. 16, 17]. The parties filed a Joint Submission on May 8, 2019. [Dkt. No. 28]. The case is ready for decision.[4]

**B. <u>Summary of ALJ Decision After Hearing</u>**

In the decision (AR 18-28), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.[5] 20 C.F.R. § 404.1520(a). At **step one**, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since August 15, 2013, the alleged onset date. (AR 20). At **step two**, the ALJ found that Plaintiff had the following severe impairments: (a) obesity, (b) history of cervical sprain with degenerative disc disease; (c) history of lumbar sprain with degenerative disc disease; (d) degenerative joint disease of the knees; (e) carpal tunnel syndrome; and (f) ulnar neuropathy. (AR 20). At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments

---

[4] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. [Dkt. Nos. 11, 14].

[5] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two. Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate. Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four. Step four: Is the claimant capable of performing his past work? If so, the claimant is not disabled. If not, proceed to step five. Step five: Does the claimant have the residual functional capacity to perform any other work? If so, the claimant is not disabled. If not, the claimant is disabled. <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (citing 20 C.F.R. §404.1520).

| | |
|---|---|
| 1 | in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526)." |
| 2 | (AR 22). |

The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC")[6] to perform light work as defined in 20 C.F.R. § 404.1567(b),[7] except:

> she can no more than occasionally climb ladders, ropes, scaffolds, balance, stoop, kneel, crouch, and crawl; frequently handle and finger bilaterally; and occasionally walk on uneven terrain.

(AR 23).

At **step four**, based on Plaintiff's RFC and the vocational expert's testimony, the ALJ found that Plaintiff is capable of performing her past relevant work as a department manager and an escrow officer. "This work does not require the performance of work-related activities precluded by the [Plaintiff's] residual functional capacity (20 CFR 404.1565)." (AR 27-28). With this finding, the ALJ did not proceed to **step five**. Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, from August 15, 2013, through the date of the decision, December 5, 2016. (AR 28).

---

[6] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. § 404.1545(a)(1).

[7] "Light work" is defined as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); see also Rendon G. v. Berryhill, 2019 WL 2006688, at *3 n.6 (C.D. Cal. May 7, 2019).

## III. ANALYSIS

### A. Issues on Appeal

Plaintiff raises two issues for review: (1) whether the ALJ properly considered the medical evidence; and (2) whether the ALJ properly considered Plaintiff's testimony [Dkt. No. 28 (Joint Submission), at p. 4]. Specifically, Plaintiff contends that the ALJ improperly rejected the medical evidence from her treating physician, Dr. Opoku and improperly rejected her subjective symptom testimony. [Id. at pp. 4, 12].

### B. Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and

internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

Error in a social security determination is subject to harmless error analysis. Ludwig v. Astrue, 681 F.3d 1047, 1054 (9th Cir. 2012). Error is harmless if "it is inconsequential to the ultimate nondisability determination" or, despite the legal error, "the agency's path may reasonably be discerned." Treichler v. Comm'r of Soc. Sec. Admin., 775 F.3d 1090, 1099 (9th Cir. 2014).

### C. The ALJ Properly Evaluated The Medical Evidence

Plaintiff contends that the ALJ erred in rejecting the limitations attributable to her severe physical impairments assessed by her treating physician, Edward Opoku, D.O. Defendant argues that the ALJ properly rejected the opinion of the treating physician.

#### 1. Standard for Weighing Medical Opinions

The ALJ must consider all medical opinion evidence. 20 C.F. R. § 404.1527(b). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). Where

the treating doctor's opinion is not contradicted by another doctor, it may only be rejected for "clear and convincing" reasons. Id. (citing Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting Bayliss, 427 F.3d at 1216). In Trevizo, the Ninth Circuit addressed the factors to be considered in assessing a treating physician's opinion.

> The medical opinion of a claimant's treating physician is given "controlling weight" so long as it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." 20 C.F.R. § 404.1527(c)(2). When a treating physician's opinion is not controlling, it is weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician. Id. § 404.1527(c)(2)-(6).

871 F.3d at 675.

"Substantial evidence" means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins, 466 F.3d at 882). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted); see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding ALJ had properly disregarded a treating physician's opinion by

setting forth specific and legitimate reasons for rejecting the physician's opinion that were supported by the entire record).

As noted above, an RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1). Only the ALJ is responsible for assessing a claimant's RFC. See 20 C.F.R. § 404.1546(c). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545).

### 2. The ALJ Gave Specific and Legitimate Reasons, Supported by Substantial Evidence

The ALJ complied with Magallanes and provided specific and legitimate reasons for rejecting the limitations assessed by Plaintiff's treating physician, Dr. Opoku that are supported by substantial evidence. At issue are two Medical Source Statements completed by Dr. Opoku in November 2014 and May 2015. (AR 988-92, 1108-111).

After a thorough review of the medical records in evidence (AR 24-26), the ALJ analyzed the two medical source statements of Dr. Opoku as follows:

> The undersigned gives less weight to the November 2014 and May 2015 opinions of Edward Opoku, D.O. that [Plaintiff] can occasionally lift less than 10 pounds, rarely lift 10 pounds, stand/walk three hours in an eight-hour day, and sit up to two hours in an eight-hour day, among other limitations [AR 988-92; 1108-111]. The doctor's assessment is brief and conclusory in form with little in the way of clinical findings or explanation of the bases to support its conclusion. In addition, the doctor is the claimant's primary care physician in connection with her workers' compensation claim. Furthermore, he indicated he saw the claimant monthly since March 2013 [Id.], but the medical records submitted in this case do not contain any treatment records prior to October 2014 [AR 993-1003].

(AR 26).

With respect to Plaintiff's ability to perform the physical aspects of her work, the ALJ determined to instead give great weight to other medical opinions that contradicted that of Dr. Opoku:

> [T]he consultative internist and the State Agency medical consultant at the reconsideration level agree that [Plaintiff] remains able to perform light work with occasional to frequent postural activities and frequent handling and fingering [AR 87-88; 1116-1123]. The undersigned gives great weight to these opinions, as they are consistent with the record as a whole, discussed above, and with each other. In addition, these doctors are experts in the Social Security disability programs, the rules in 20 CFR 404.1527(e), and in the evaluation of the medical issues in disability claims under the Act. To the extent the consultative internist also opined that [Plaintiff] is limited to occasional walking on an uneven terrain, I give greater weight to her opinion because she examined [Plaintiff] personally and is board-certified in her specialty [AR 1117].

(AR 26). As Dr. Opoku's opinion was contradicted by other doctors' opinions, in rejecting it, the ALJ was required to provide "specific and legitimate reasons that are supported by substantial evidence." See Trevizo, 871 F.3d at 675. The ALJ did so here.

To begin, as Defendant notes, it was proper for the ALJ to assess the various medical opinions, state reasons for doing so, and conclude to give greater weight to the opinions of the consultative examining physician and the State Agency medical consultant than to Plaintiff's treating physician. It is the role of the ALJ, and not this Court, to interpret and resolve any ambiguities in the medical records. See Tommasetti, 533 F.3d at 1041-42 ("The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."); Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (holding that it is the ALJ's job to resolve any conflicts). Indeed, in giving greater weight to these other medical opinions, the ALJ noted that they were consistent with the record as a whole, consistent with each other and completed by doctors that are experts in Social Security disability programs and rules. (AR 26).

In addition, the ALJ set forth specific and legitimate reasons, supported by substantial evidence, for giving less weight to the opinions of Dr. Opoku. Plaintiff states that Dr. Opoku provided treatment to Plaintiff at IGEN Medical, including completing two Medical Source Statements, and cites to the following records, AR 988-92, 993-1003, 1108-1111, and 1196-1203. [Dkt No. 28, p. 6]. These records include the November 21, 2014 Medical Source Statement (AR 988-92), the May 29, 2015 Medical Source Statement (AR 1108-111), Dr. Opoku's examination notes from October 3, 2014 and November 21, 2014 (AR 993-1003), and Dr. Opoku's examination notes from August 16, 2013 (AR 1196-199). Plaintiff's record citation also includes AR 1200-1203, but these are not the examination records of Dr. Opoku, but instead those of a chiropractor, Kamiz Nourian, D.C., dated September 17, 2013. Plaintiff points to no further records in evidence for Dr. Opoku. Plaintiff's concession of these very limited exam records only bolsters one of the ALJ's stated reasons for discounting Dr. Opoku's opinion: that his Medical Source Statements indicated he saw Plaintiff monthly since March 2013, but the medical records do not provide evidence of this.[8] (AR 26)

The ALJ also correctly noted that Dr. Opoku's assessment is brief and conclusory in form with little in the way of clinical findings or explanation of the bases to support

---

[8] The ALJ mistakenly stated that the medical records submitted do not contain any treatment records prior to October 2014. (AR 26). As noted above, AR 1196-1199 contains Dr. Opoku's exam notes dated August 16, 2013. The inclusion of one recorded examination in August 2013, however, does not undercut the ALJ's criticism of Dr. Opoku's statement that he examined Plaintiff monthly since March 2013 through the date of the last report, May 29, 2015, and then Plaintiff only submitted exam notes from March 2013, October 2014 and November 2014. Thus, the Court finds this misstatement by the ALJ to be harmless. See Treichler, 775 F.3d at 1099 (Error is harmless if "it is inconsequential to the ultimate nondisability determination" or, despite the legal error, "the agency's path may reasonably be discerned.")

its conclusions. As just stated, there were very few examination notes submitted to support the conclusory opinions – and, indeed, those few notes in evidence were not consistent with the extreme limitations set forth in the medical source statements. After checking off significant limitations he assessed of Plaintiff, when asked to explain the basis for his conclusions for the limitations, Dr. Opoku merely stated: "Patients limitations is based on diagnostic testing and objective findings." (AR 1111). No reference is made to any specific testing or objective findings. Thus, there is no argument here that the assessment is anything other than conclusory. <u>Bray v. Comm'r</u>, 554 F.3d 1219, 1228 (9th Cir. 2009) (noting that the "ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings."); <u>Connett v. Barnhart</u>, 340 F.3d 871, 875 (9th Cir. 2003) (ALJ properly rejected treating physician's opinion where "treatment notes provide[d] no basis for the functional restrictions [physician] opined should be imposed on [claimant]"); <u>Bayliss v. Barnhart</u>, 427 F.3d 1211, 1216 (9th Cir. 2005) (discrepancy between physician's notes and other recorded observations and opinions regarding claimant's capabilities "clear and convincing reason" for rejecting physician's opinion).

Finally, the ALJ also made reference to the fact that Dr. Opoku is Plaintiff's primary care physician in connection with her worker's compensation claim. Earlier in the ALJ's decision she noted that many of the medical records in the case were prepared in the context of the worker's compensation claim system, which is adversarial in nature. (AR 24). In outlining the distinction with the social security context, the ALJ noted that "the credibility and relevance of the opinions of these physicians must be carefully assessed because of the involvement with the workers' compensation claim."

(Id.). Thus, the Court finds that the ALJ's reference to the fact that Dr. Opoku is Plaintiff's primary care physician in connection with her worker's compensation claim was nothing more than highlighting her earlier stated intention in carefully assessing that the physician's opinion was properly assessed in the context of the social security claim at issue. See Booth v. Barnhart, 181 F.Supp.2d 1099, 1104 (C.D. Cal. 2002) (discussing the distinction between findings in workers' compensation disability ratings and relevance in decisions under the Social Security Act). There was no error in this statement by the ALJ.

The Court concludes that the ALJ provided "specific and legitimate" reasons based on substantial evidence for her rejecting the limitations set forth in Plaintiff's treating physician's medical source statements. Although Plaintiff offers alternative interpretations of the medical record, the Court is bound by the rationale set forth by the ALJ in the written decision. Ryan, 528 F.3d at 1198; see Robbins, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ.").

### D. **The ALJ Properly Evaluated Plaintiff's Testimony**

Plaintiff asserts that the ALJ improperly evaluated her subjective complaints. Defendant contends that the ALJ appropriately found Plaintiff's testimony not fully supported by the record.

#### 1. Legal Standard for Evaluating Claimant's Testimony

A claimant carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Once the claimant meets that burden, medical

findings are not required to support the alleged severity of pain. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to support the severity of his pain") (citation omitted)). Defendant does not contest, and thus appears to concede, that Plaintiff carried her burden of producing objective medical evidence of her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms.

Once a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton, 331 F.3d at 1040. To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ "may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 489 ("we require the ALJ to specify which testimony she finds not credible, and then provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination"); Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017).

The ALJ may consider at least the following factors when weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas, 278 F.3d at 958-59 (citing Light, 119 F.3d at 792). "If the ALJ's

credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Id. at 959 (citing Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999)).

### 2. The ALJ provided Clear and Convincing Reasons Supported by Substantial Evidence

Having carefully reviewed the record, the Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.[9] The ALJ found that Plaintiff's subjective complaints were not consistent with the evidence of record, routine care received for common ordinary medical problems, the treatment she has received has been generally successful in controlling her symptoms, and Plaintiff's reasonably normal level of daily living and interaction. (AR 24-26).

Important to note, the ALJ did not entirely reject Plaintiff's testimony concerning her pain, symptoms, and level of limitation. Rather, the ALJ stated that "the claimant's alleged symptoms are *not fully consistent with and supported by* the evidence of record." (AR 26) (emphasis added).

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's and his friends' statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision.

(AR 23). Indeed, the ALJ took Plaintiff's severe impairments and reported symptoms into consideration "[b]y limiting the claimant to light work with postural and

---

[9] The ALJ did not make a finding of malingering in the decision. (AR 18-28). Thus, in discounting Plaintiff's subjective complaints, the ALJ was required to articulate specific, clear and convincing reasons. See Benton, 331 F.3d at 1040; Brown-Hunter, 806 F.3d at 489.

manipulative limitations as described [in the RFC], her substantiated physical impairments are fully accommodated." (AR 24).

First, although a lack of, or inconsistency with, objective medical evidence cannot be the sole reason for discounting a claimant's testimony, it can be one of several factors used in evaluating subjective complaints. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ did a thorough review of Plaintiff's medical records and found that they did not fully support Plaintiff's allegations. (AR 24). The ALJ discussed and cited to numerous medical records with largely mild findings. The ALJ, in reviewing additional records in evidence, noted that "the objective evidence does not corroborate the extent of the claimant's alleged pain." (Id.). It was proper for the ALJ to consider these records in her analysis.

The ALJ next noted that medical records "largely show routine care for common, ordinary problems." (AR 25). After making this observation, the ALJ discussed and cited to numerous medical records of routine and conservative treatment – even noting that records in evidence closest to Plaintiff's alleged onset date related to an ingrown toenail and a blood pressure check. (AR 25). "She did not seek treatment for her allegedly disabling conditions until April 2014, when she began physical therapy." (Id. citations omitted). It was proper for the ALJ to cite to Plaintiff's routine treatment in discounting her testimony.[10] See Parra v. Astrue, 481 F.3d 742, 751 (9th Cir. 2007)

---

[10] The Court notes that Plaintiff's receipt of two epidural injections in October 2013 and February 2014 do not qualify as conservative treatment. See Garrison v. Colvin, 759

(finding that proof of "conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (finding that an ALJ can rely on a physician's failure "to prescribe... any serious medical treatment for [a claimant's] supposedly excruciating pain").

The ALJ also noted that Plaintiff's "treatment has been generally successful in controlling her symptoms." (AR 25). This reason is another proper basis for discounting Plaintiff's subjective complaints. See Lindquist v. Colvin, 588 F. App'x 544, 547 (9th Cir. 2014) (ALJ properly discounted claimant's testimony in part because symptoms were controlled).

Finally, the ALJ also found that Plaintiff's "reported daily activity are inconsistent with her alleged degree of impairment and further support the [RFC] . . ." (AR 25) (noting household chores, tending to her personal care, living with others, spending time with others socially, shopping, handling finances, crocheting and flying to Chicago).[11] An ALJ is permitted to consider daily living activities in her credibility analysis. See 20 C.F.R. § 404.1529(c)(3) (daily activities are a relevant factor which will be considered in evaluating symptoms); see also Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1227 (9th Cir. 2009) ("In reaching a credibility determination, an ALJ may weigh inconsistencies between the claimant's testimony and his or her conduct, daily activities, and work record, among other factors").

---

F.3d 995, 1015 n.20 (9th Cir. 2014) (expressing "doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"). These two injections, however, without more, do not change the fact that Plaintiff's care was overall routine and conservative, as outlined by the ALJ.

[11] Plaintiff argues that the ALJ has misstated her testimony concerning the extent of her daily activities. However, the ALJ relied and cited to not only Plaintiff's testimony at the hearing (AR 40-67), but also statements she made in her written function reports (AR 179-87, 213-19 and 222-31).

The ALJ also noted that "the claimant's activities are reasonably normal and tend to show that she does have the ability to perform basic work functions. While activities of daily living do not prove the claimant's ability to perform work activity, neither do they support her allegations of chronic pain and lack of ability to perform work activity." (AR 26). Although Plaintiff takes issue with this, an ALJ is permitted to consider daily living activities in her credibility analysis. See Burch, 400 F.3d at 681. Daily activities may be considered to show that Plaintiff exaggerated her symptoms. See Valentine v. Astrue, 574 F.3d 685, 694 (9th Cir. 2009) (ALJ properly recognized that daily activities "did not suggest [claimant] could return to his old job" but "did suggest that [claimant's] later claims about the severity of his limitations were exaggerated.").

Based on these clear, convincing and specific reasons for partially rejecting Plaintiff's pain and limitations testimony and the substantial evidence to support her determination, the Court concludes that the ALJ did not commit error in discounting Plaintiff's testimony.

**IV. CONCLUSION**

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED, and the action is DISMISSED with prejudice. Judgment shall be entered accordingly.

DATE: March 18, 2020

                        /s/ Autumn D. Spaeth
                        THE HONORABLE AUTUMN D. SPAETH
                        United States Magistrate Judge